**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernadette Carlson,<br><br>      Plaintiff,<br><br>vs.<br><br>The Independent Order of the Foresters,<br><br>      Defendant. | No. CV-15-01230-PHX-PGR<br><br>ORDER |

      Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 30), wherein the defendant seeks summary judgment as to the entirety of the plaintiff's complaint. Having considered the parties' memoranda in light of the admissible evidence of record, the Court finds that there are no genuine issues of material fact regarding the defendant's liability and that it is entitled to entry of judgment in its favor as a matter of law pursuant to Fed.R.Civ.P. 56.[1]

---

[1] While the defendant has requested a hearing on its summary judgment motion, the Court concludes that oral argument would not materially aid the Court in its resolution of the motion.
      The Court notes that it has intentionally discussed only those arguments raised by the parties that it deems necessary to the resolution of the summary judgment motion.

Background

This action arises from the decision of defendant The Independent Order of the Foresters ("Foresters")[2] to deny payment of accidental death benefits to plaintiff Bernadette Carlson, who is the beneficiary under the Accidental Death Term Insurance Certificate ("the Policy") issued to her mother, Anna Carlson ("the decedent").[3] The plaintiff's complaint raises claims for Breach of Contract (Count I) and for Bad Faith (Count II).

Foresters issued the Policy to the decedent with the benefit amount of $300,000 on December 5, 2012. The Policy states that "Subject to the terms and conditions of the entire contract, [Foresters] will pay the death benefit upon [its] receipt of due proof of the insured's accidental death." The Policy defines "Accidental death" in relevant part as being "Death that ... is caused, directly and independently from all other causes, by an injury that occurs while this certificate is in effect[.]" The Policy defines "Injury" as "An accidental bodily injury that is the direct result of an accident, independent of an illness, disease, condition or bodily infirmity." The Policy states that it will not pay the death benefit if the insured's death "results directly or indirectly" from various excluded risks, which include "Disease or infirmity

---

[2] Foresters was originally sued as Foresters Insurance Company. Pursuant to the parties's subsequent Joint Motion and Stipulation to Amend the Case Caption (Doc. 39), wherein they stipulated that the correct name of the defendant is "The Independent Order of the Foresters," the Court ordered that the defendant's name be so changed on the docket. Based on the insurance policy at issue, it appears that the defendant's correct name is actually "The Independent Order of Foresters." The Court will not correct the caption again because no party has requested it to do so.

[3] The Policy names the decedent as Anna M. Carlson. The Certificate of Death lists the decedent's name as Ann M. Carlson, with the "AKA" of Anna Marie Carlson.

of mind or body" and "Stroke or cerebrovascular accident or event, cardiovascular accident or event, myocardial infraction or heart attack, coronary thrombosis, or aneurysm, even if the proximate or precipitating cause is an injury." The Policy provides that the law of Arizona governs the rights and obligations under the Policy.

The decedent died at her home on February 11, 2013, at 5:46 a.m. No autopsy was performed at the request of her family and her body was cremated. Dr. Trinh T. Doan, an internal medicine specialist who was the decedent's treating physician since May 2002, completed the decedent's State of Arizona Certificate of Death on February 12, 2013, and the death certificate was registered with the state on February 26, 2013. In the box on the death certificate that asks for "Immediate Cause of Death," Dr. Doan stated "Asphyxiation from Aspiration." In the boxes on the certificate that asks for what the death was "Due to or as a Consequence of," Dr. Doan stated "obstructive sleep apnea" and "coronary artery disease." Dr. Doan also listed "obesity, diabetes mellitus" on the certificate as "other significant conditions contributing to death but not resulting in the underlying [stated] causes." In the box on the death certificate that asks "Injury?", Dr. Doan stated "No" and in the box that asks "Manner of Death," she stated "Natural Death." It is undisputed that the decedent's exact cause of death cannot be established to any reasonable degree of medical probability due to the lack of an autopsy.

The plaintiff sent Foresters a claim for death benefits dated February 26, 2013. Foresters denied the claim on March 27, 2013; its denial letter stated in relevant part: "According to Ms. Carlson's death certificate, the cause of death is listed as Asphyxiation for [sic] Aspiration and was not deemed an accident; therefore there is no death benefit payable."

Discussion

A. Summary Judgment Standard

On an issue on which the plaintiff has the burden of proof, Foresters may move for summary judgment by pointing to the absence of facts required to withstand summary judgment. Foresters has met this initial responsibility in part by noting that the decedent's death certificate states that the decedent died a natural death that was not an injury, and that her death was due to or a consequence of coronary artery disease and obstructive sleep apnea.[4] The death certificate is a public record of a vital statistic that is admissible in evidence pursuant to Fed.R.Evid. 803(9) and is self-authenticating pursuant to Fed.R.Evid. 902(1), and it is "prima facie evidence of the facts therein stated" pursuant to A.R.S. § 12-2264.

Since Foresters has made a properly supported summary judgment motion, the plaintiff must set forth specific facts showing that there is a genuine issue for trial in order to survive the motion, i.e. that there are genuine factual issues that properly can be resolved only by a trier of fact at trial because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The production by the plaintiff of a scintilla of evidence, or evidence that is merely colorable or not significantly probative, is not sufficient to present a genuine issue as to a material fact. *Id.*, at 249-50, 252. In making the decision as to whether the plaintiff has met this standard, the Court may neither make credibility

---

[4] As support for its argument that the cause of the decedent's death was not "independent of an illness, disease, condition or bodily infirmity" as required by the Policy, Foresters stated in its Statement of Facts No. 43 (Doc. 31, at 7) that "Dr. Doan defined [the decedent's] coronary artery disease and obstructive sleep apnea as 'disease processes' or 'medical conditions' that were probable causes of death." The plaintiff stated in her Response to Defendants' [sic] Statements of Fact with regard to No. 43 (Doc. 34, at 6) that "Plaintiff agrees with DSOF paragraph 43."

determinations nor weigh the evidence, and it must believe the admissible evidence of the plaintiff and must draw all justifiable inferences from that evidence in her favor. *Id.*, at 255. The Court must also be guided by the substantive evidentiary standards that apply to the case in determining whether a factual dispute requires submission to the trier of fact, *id.*, which means that the Court "can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir.2002).

B. Breach of Contract

    1. Coverage Under the Policy

In Count I of her Complaint, the plaintiff alleges that Foresters breached its insurance contract with the decedent by refusing to pay the plaintiff's claim for the accidental death benefits due under the Policy. Foresters argues in part that it is entitled to summary judgment on the breach of contract claim because the plaintiff has not met her burden of proving that the decedent died from an "accidental death" within the meaning of the Policy.

Under the governing Arizona law, the plaintiff "has the burden of proving that death resulted from accidental rather than natural causes, within the coverage of and defined by the clauses of the insurance policies." Valley National Bank of Ariz. v. J.C. Penney Ins. Co., 628 P.2d 991, 993 (Ariz.App.1981); *accord*, Young v. Pacific Mutual Life Ins. Co. of Calif., 9 P.2d 191, 192 (Ariz.1932) ("[A] plaintiff suing to recover on an accident policy ... must first establish [by a preponderance of the evidence] the fact of death or injury by accident or accidental means, and that until he does so no case is made out.")

In arguing that a reasonable trier of fact could conclude there was coverage under the Policy for the decedent's death, the plaintiff contends that the decedent

1 directly died from an accidental asphyxiation from aspiration that was independent
2 of any excluded illness or disease.  In so arguing, the plaintiff relies exclusively on
3 the deposition testimony of Dr. Doan, who testified as a treating physician and not
4 as an expert witness.[5]  Dr. Doan testified in relevant part that the "most likely cause"
5 of the decedent's death was asphyxiation from aspiration (Doan depo., at 62), that
6 it was "probable" that the decedent accidently died from asphyxiation from aspiration
7 (*id*. at 19), that it was "probable" that she died as a result of swallowing some
8 materials and that stopped her breathing (*id.*, at 14), and that asphyxiation from
9 aspiration is not a disease, illness, or a medical condition. (*Id.*, at 41).[6]

10 　　　　While the Court agrees with the plaintiff that she need not establish
11 conclusively in her favor that asphyxiation from aspiration was the exact cause of the
12 decedent's death in order to defeat summary judgment, she cannot meet her burden
13 of presenting affirmative evidence sufficient to allow the trier of fact to return a
14 verdict her favor by relying on conjecture and speculation. <u>British Airways Board v.</u>

---

[5] Because the Court concludes that Dr. Doan's testimony is insufficient to defeat the defendant's summary judgment motion, the Court does not reach the issue raised by the defendant in its motion *in limine* regarding Dr. Doan's ability to opine on the cause of the decedent's death.

[6] While Dr. Doan testified that she did not know what caused the decedent to die from asphyxiation from aspiration (*id.*, at 13), the plaintiff alleges in her complaint that the decedent suffered from a respiratory disease that required her to use a CPAP machine while sleeping that had a mask that covered her mouth and nose, and she died accidently when she vomited into her CPAP mask and breathed in the emesis which caused her to aspirate and asphyxiate.

Dr. Doan further testified that the decedent's family reported to her that they think the decedent may have aspirated in the night with her CPAP since she was found with blood in the oral cavity. (*Id.*, at 16).  When Dr. Doan was asked if it was her understanding that the decedent had her CPAP running at the time she died, Dr. Doan stated "That's my understanding. I'm not sure." (*Id.*, at 15).

1  Boeing Co., 585 F.2d 946, 952 (9th Cir.1978).  Having reviewed the admissible
2  evidence of record and the reasonable inferences from that evidence in the plaintiff's
3  favor, the Court concludes the plaintiff has failed to submit the actual quantum and
4  quality of proof necessary to create a triable issue of fact as to whether the
5  decedent's death met the Policy's definition of an accidental death.  This is so
6  because it is clear from Dr. Doan's testimony that she has no personal knowledge
7  concerning the circumstances of the decedent's death, and that her statements
8  relied on by the plaintiff regarding cause of death are based on improper hearsay
9  and conjecture, which Foresters has objected to.  Skillsky v. Lucky Stores, Inc., 893
10 F.2d 1088, 1091 (9th Cir.1990) ("Like affidavits, deposition testimony that is not
11 based on personal knowledge and is hearsay is inadmissible and cannot raise a
12 genuine issue of material fact sufficient to withstand summary judgment."); *accord*,
13 Jacobsen v. Filler, 790 F.2d 1362, 1367 (9th Cir.1986) ("Finally, Jacobsen's
14 deposition testimony about what he read in a newspaper article (not introduced into
15 evidence) and what his attorneys told him is not based on personal knowledge and
16 is inadmissible hearsay.  Therefore it fails to raise a genuine issue sufficient to
17 withstand summary judgment.")

18         There is no dispute that Dr. Doan, prior to completing the death certificate,
19 never examined the decedent's body (*id.*, at 20) and did not talk to any of the
20 emergency medical personnel or police officers who were called to the decedent's
21 residence as a result of her death. (*Id.*, at 20-21).  While Dr. Doan generally testified
22 that she based her decision regarding the decedent's death in part on her knowledge
23 of the decedent's past medical records (*id.*, at 22), it cannot be disputed from the
24 record before the Court that the determinative basis for Dr. Doan's decision to list
25 asphyxiation from aspiration as the probable cause of death came solely from
26

information given to her by the decedent's family, specifically from the information that the decedent's sister, Lori Bowyer, told her, which information was given to Ms. Bowyer by the plaintiff, the decedent's daughter. (*Id.*, at 16, 21, 33, 43, 50-51).[7]

---

[7]
    Examples from Dr. Doan's testimony regarding her lack of personal knowledge about how the decedent died include the following:

Q. ... So, the basis for your knowledge in determining the cause of death was from your conversation with [the decedent's] sister - -
A. That is correct.
Q - -  and what she reported to you as [sic] what she saw at the scene?
A. Was from the daughter.
Q. Okay. The daughter reported to you what she saw at the scene?
A. Her daughter reported to the sister.
Q. Okay. So, the daughter reported to the sister what she had seen and the sister reported to you - -
A. Correct.
Q. - - what the daughter had told her?
A. Correct.
(*Id.*, at 21)

Q. Okay. So, some kind of blood was what she aspirated and asphyxiated on?
A. As reported to me from the family.
Q. Does that make logical sense to you?
A. This is what was reported to me from the family.
Q. But as a physician, does it make logical sense that somebody could aspiration – excuse me, asphyxiate from aspirating some blood?
A. Again, this is what was reported to me.
(*Id.*, at 16)

Q. And we don't know for a fact [what was aspirated] was blood, correct?
A. Only from my conversation with the sister.
Q. Okay. Now, the sister is not a medical doctor, though, correct?
A. That is correct.
Q. Could it have been vomit?
A. It could.
Q. Is it possible she didn't aspirate at all, we're just going off the sister and the sister was wrong? Is that possible?
A. Possibly.

1  There is no testimonial or documentary evidence of record from the decedent's
2  daughter or the decedent's sister, or from the paramedics, or from any other source
3  with any personal knowledge about the circumstances of the decedent's death. Dr.
4  Doan's belief that it is probable that an accidental asphyxiation from aspiration was
5  the cause of death appears to be improperly based on speculation and double
6  hearsay. As such, it is insufficient to create a triable issue of material fact regarding
7  the breach of contract claim.

    2. Reasonable Expectation of Coverage

    The plaintiff, citing to Gordinier v. Aetna Casualty and Surety Co., 742 P.2d 277 (Ariz.1987), also argues that summary judgment is not proper because a reasonable trier of fact could find that the decedent had a reasonable expectation of coverage. In Gordinier, the Arizona Supreme Court noted that Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations, the third stated example of which is "[w]here some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured." *Id.*, at 283-84. The plaintiff asserts that Foresters' Required Outline of Coverage ("the Outline") provided to the decedent would create an objective impression of coverage in the mind of a

---

(*Id.*, at 43)

Q. And absent doing that [performing an autopsy], we just don't know for sure why she died; is that correct?
A. That is correct.
Q. We can say it's possible that she died by asphyxiation by aspiration, by [sic] we don't know if it's more probable than not. Is that fair to say?
A. It's more probable - - it's [sic] we look at what the patient's family witnessed at that time and go with the probable cause.
(*Id.,* at 50-51)

reasonable insured under Gordinier's third exception. Foresters argues that the Outline cannot be considered and must be stricken because it was not timely disclosed by the plaintiff and it lacks foundation.

The Court concludes that it need not reach the issue of the Outline's admissibility because the plaintiff's cursory argument, to the extent that the Court understands it, is substantively meritless even if the Outline is considered. While the Court agrees with the plaintiff's contention that a reasonable insured's expectation would be that the Policy would cover what is stated in the Outline, the plaintiff makes no cogent argument as to how the Outline differs from the Policy in relevant material terms so as to create some reasonable expectation of coverage not found in the Policy. The plaintiff does state in her responsive memorandum and in her statement of facts that the Outline does not define "injury," but the Outline clearly does so in its first paragraph, and the Outline's definition of "injury" and its definition of "accidental death" are identical to those definitions set forth in the Policy.[8] There is simply no triable issue of material fact concerning whether the Outline created some

---

[8] In any case, even if the statements in the Outline differed in some unexplained material manner from the terms of the Policy, any reliance on those differences by the decedent, and no such reliance has been shown by the plaintiff, would not be objectively reasonable because the Outline states in very clear language in its second paragraph:

> READ YOUR INSURANCE CONTRACT CAREFULLY: This outline of coverage provides a very brief description of some of the important features of the insurance contract. This is not the insurance contract and only the actual provisions of the insurance contract will control. The insurance contract sets forth in detail the rights and obligations of both you and us. It is, therefore, important that you READ THE INSURANCE CONTRACT CAREFULLY.

(Capitalization in the original.)

objectively reasonable expectation of coverage for the decedent's death outside of the provisions of the Policy.

C. Bad Faith

In Count II of her Complaint, the plaintiff alleges that Foresters breached its implied duty of good faith and fair dealing by failing to compensate her as required by the Policy without a reasonable basis for doing so, and by failing to perform an adequate evaluation to determine whether its denial of her insurance claim was supported by a reasonable basis. The plaintiff further seeks punitive damages for Foresters' bad faith. Foresters seeks summary judgment on the bad faith claim, including the request for punitive damages.

Under Arizona law, '[t]he tort of bad faith arises when the insurer intentionally denies, fails to process or pay a claim without a reasonable basis." Zilisch v. State Farm Mutual Automobile Ins. Co., 995 P.2d 276, 279 (Ariz.2000) (internal quotation marks omitted). In order to defeat summary judgment on her bad faith claim, the plaintiff has the burden of showing there is significant probative evidence that Foresters (1) acted unreasonably towards her as the policy's claimant, and (2) either knew that it was acting unreasonably or demonstrated such reckless disregard to the reasonableness of its actions that such knowledge may be imputed to it. James River Ins. Co. v. Hebert Schenk, P.C., 523 F.3d 915, 923 (9th Cir.2008). The first element of this test is objective and asks whether Foresters acted in a manner consistent with the way a reasonable insurer would be expected to act under the circumstances, and the second element is subjective and requires consciously unreasonable conduct by Foresters. *Id.* The plaintiff argues that there is a triable issue of fact as to whether Foresters committed bad faith. The Court disagrees.

First, the Court concludes there is no triable issue as a matter of law regarding

that portion of the bad faith claim based on Foresters' denial of coverage given the Court's finding herein that Foresters is entitled to summary judgment on the breach of contract claim as a result of the plaintiff's failure to submit significant probative evidence that the decedent's death fell within the coverage of the Policy. Manterola v. Farmers Ins. Exchange, 30 P.3d 639, 646 (Ariz.App.2001) ("We agree that a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage ultimately is made. ... [N]one of the [Arizona] cases suggests that a carrier may be held liable for bad faith denial of coverage in the face of a final judicial determination that there was no coverage.")

Second, while the Court's summary judgment ruling regarding the coverage issue is not dispositive of that portion of the plaintiff's bad faith claim alleging that Foresters failed to reasonably evaluate her claim since an insurer may commit bad faith in processing or evaluating a claim in an unreasonable manner even if the insurance policy does not provide coverage, *see e.g.*, Deese v. State Farm Mutual Automobile Ins. Co., 838 P.2d 1265, 1270 (Ariz.1992) (Court held that a plaintiff "need not prevail on the [breach of insurance] contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing."); Lloyd v. State Farm Mutual Automobile Ins. Co., 943 P.2d 729, 737 (Ariz.App.1996) ("The covenant of good faith and fair dealing can be breached even if the policy does not provide coverage."), the Court concludes that the plaintiff has not submitted significant probative evidence sufficient to create a triable issue of fact regarding the reasonableness of Foresters' evaluation of her claim.

The plaintiff argues that a reasonable trier of fact could conclude that if Lisa Buckland, Foresters' claims adjudicator who denied the plaintiff's claim, had

performed an appropriate investigation Foresters would have paid the plaintiff's claim. The plaintiff contends that Buckland, rather than performing a sufficient investigation, improperly denied her claim solely on the fact that the death certificate stated that the decedent's death was a natural death.

Buckland testified in relevant part that in reviewing an accidental death claim she would look at the death certificate to see the cause of death and the manner of death (Buckland's depo., at 67), that her inquiry does not end if the death certificate indicates that there was no injury, (*id.*, at 70), that if the death certificate says that the death was natural that doesn't necessarily mean that the claim is not covered (*id.*, at 72-73), that she would look at the immediate and underlying cause of death parts of the death certificate (*id.*, at 73), that once she looked at the injury part, the manner of death part, the immediate cause of and the due to or as a consequence of parts of the death certificate, she would refer to the contract to determine if the death fell within the definition of accidental death (*id.*, at 74), that she didn't ask for any medical records regarding the plaintiff's claim (*id.*, at 76), that she would not request a decedent's medical records in an accidental death policy claim if the death certificate stated that the death was a natural one (*id.*, at 79, 81, 83, 98) because she's going to deny the claim (*id.*, at 81, 98), that Foresters has doctors on staff that she could go to if she needed to (*id.*, at 86), and that she didn't recall if anybody asked her to look at additional information that Foresters received, and she never saw the later-obtained EMS report, police report, or photos, and that she didn't recall talking to the plaintiff. (*Id.*, at 112).

Eli Wahby, who became Foresters' claim manager for North America in October 2014 after the plaintiff's claim was adjudicated, testified in relevant part that at the time the plaintiff's claim was denied nobody had to review a claim denial made

1 by the claims adjudicator (Wahby depo., at 60), that he made an independent
2 determination of the plaintiff's claim as a result of new information provided to him
3 by Forester's legal counsel which included a redacted EMS report, the police report,
4 and some photos (*id.*, at 90), that the new information did not add anything new in
5 terms of the claims decision that was made and did not change his opinion of how
6 the claim was processed (*id.*, at 91-92), that based on all of the information he had
7 he reached the same conclusion regarding the claim (*id.*, at 94), that it was his
8 understanding that the decedent choked on something (*id.* at 96-97), that it was his
9 understanding based on the death certificate that the decedent died from natural
10 causes (*id.*, at 98), that Foresters has some doctors on-site but he was not aware
11 that anybody went to them to ask about the decedent's death (*id.*, at 110), that
12 Foresters could have gotten information regarding medical cause of death by going
13 to the Internet, by getting medical authorizations to get medical records, by asking
14 the doctor who filled out the death certificate, by asking the EMS or the police, by
15 hiring a private investigator, by consulting a Phoenix-area attorney, by asking
16 Foresters' legal department, by asking the beneficiary, or by requesting medical
17 records from the decedent's primary care physician (*id*, at 111-116), that Foresters
18 would not do any of the above investigative work because the decedent's death
19 certificate stated that she died from natural causes (*id.*, at 114), that he could not
20 foresee any claim being covered under an accidental death policy if the death
21 certificate stated that the death was a natural one (*id.*, at 116), and that no additional
22 information is needed to determine if a claim is covered if the death certificate says
23 that the death was a natural one. (*Id.*, at 118).

24   The failure of an insurer to pay a claim is unreasonable unless the claim's
25 validity is "fairly debatable" after an adequate investigation. Rawlings v. Apodaca,

726 P.2d 565, 572 (Ariz.1986).  The plaintiff does not dispute that the Policy provided benefits solely for death caused by an accidental injury independent from all other causes, or that the death certificate stated that the decedent died a natural death that was not the result of an injury and that it stated that the immediate cause of death of asphyxiation from aspiration was "due to or as a consequence of" coronary artery disease and obstructive sleep apnea. What the plaintiff argues is that the denial of her claim was not fairly debatable based on her contention that had Foresters used the investigative resources at its disposal it would have learned that the decedent's death was the result of accidental asphyxiation independent of any disease, illness, or medical condition.

The Court is unpersuaded by this since "[a]n insurance company's failure to adequately investigate only becomes material [to a bad faith claim] when a further investigation would have disclosed relevant facts." Aetna Casualty and Surety Co. v. Superior Court, 778 P.2d 1333, 1336 (Ariz.App.1989).  Nowhere in the submitted record is there any admissible evidence that Foresters, in its evaluation of the accidental death claim, ignored evidence favorable to the plaintiff, and the plaintiff's bare assertion that additional investigation would have uncovered evidence of an accidental death within the purview of the Policy is insufficient to create a material issue of fact.  The plaintiff does not explain what admissible evidence existed that would have made Foresters' claim denial unreasonable, and any contention that the decedent's unobtained medical records or unobtained EMS or police reports would have yielded evidence of coverage is purely speculative since the plaintiff has not made any such reports part of the record. *Id.* ("The plaintiff has not advised this court, specifically or otherwise, concerning what additional pertinent facts would have been determined by any further investigation.  Therefore she has failed to

establish that the insurance company's pre-denial investigation could amount to bad faith.") Furthermore, even if Foresters was negligent in failing to utilize additional investigative tools notwithstanding the statements made in the death certificate, a showing of negligence by the insurer is insufficient as a matter of law to meet the plaintiff's burden of showing bad faith. Deese, 838 P.2d at 1268-69.

Because the Court concludes that Foresters is entitled to summary judgment on the plaintiff's bad faith claim, it is also entitled to summary judgment on the plaintiff's request for punitive damages.  Therefore,

IT IS ORDERED that Defendant's Motion *In Limine* re: Exclusion of Dr. Doan's Opinion as to Decent's Cause of Death (Doc. 37) and its Motion for Summary Disposition of Dkt. 37, Motion *In Limine* re: Exclusion of Dr. Doan's Opinion as to Decedent's Cause of Death (Doc. 41) are denied as moot.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 30) is granted in its entirety.  The Clerk of the Court shall enter judgment for the defendant accordingly.

DATED this 13th day of March, 2017.

Paul G. Rosenblatt
United States District Judge